RASKIN HOTEL CO., APPELLANT, *v.* CITY OF CINCINNATI, APPELLEE.

(No. 7883—Decided July 12, 1954.)

Mr. *Irving Harris*, for appellant.
Mr. *Henry Breustle,* city solicitor, and Mr. *Edgar Holtz,* for appellee.

Ross, J. This is an appeal on questions of law and fact from a decree of the Court of Common Pleas of Hamilton County.

The plaintiff filed a petition for injunction, in which it is stated that plaintiff is the owner of a hotel abutting on Fourth Street and Broadway in the city of Cincinnati, which are public thoroughfares in such city and which hotel has entrances on Fourth Street and Broadway; that the employees of such city have caused certain "No Parking" signs to be installed and maintained in front of the entrances to such hotel; that such signs "substantially interfere with plaintiff and plaintiff's customers' access to and right of egress and ingress to the hotel; that the effect of this is to materially obstruct the plaintiff's use of its property; and to deprive the plaintiff of the property rights in Fourth Street, and the private rights and easements which they respectively now have in same."

It is claimed in the petition also that municipal ordinance No. 508-14 is unconstitutional.

The prayer is for an injunction abating such signs and that such ordinance be declared unconstitutional.

The answer of the defendant admits the installation

and maintenance of "No Parking" signs, and that their existence is authorized by sections 502-10 and 508-14 of the Cincinnati municipal ordinances.

Further answering, the defendant states that "the plaintiff's only right to the streets, other than the rights enjoyed by other members of the public, is the right of ingress and egress and that such right is granted to the plaintiff and fully protected."

In the reply of the plaintiff, it is stated that Section 508-14 of the Municipal Ordinances of the City of Cincinnati, authorizing the city manager to erect traffic signs prohibiting parking or stopping of vehicles, is unconstitutional.

From the evidence it appears that the council of the city of Cincinnati has enacted ordinances in force and applicable to the facts here presented.

Section 508-14 of such ordinances provides:

"*Parking and Stopping Restrictions. Authorization.* The city manager is hereby authorized and required to ascertain upon what highways and parts of highways the accommodation of traffic or the safety of the public requires the restriction as to time, or the prohibition, of the parking or stopping of vehicles; and he shall erect and maintain appropriate traffic signs plainly indicating the purpose of such restrictions. It shall be unlawful to park or stop a vehicle in violation of a traffic sign so erected."

Section 501-P-1 defines parking as follows:

"The standing of a vehicle, whether occupied or unoccupied, within a highway. The term shall not apply to the temporary stopping of a vehicle for the purpose of and while actually engaged in loading or unloading passengers or merchandise."

Section 502-10 provides:

"*Traffic Signs and Signals. ₁Authorization.* It shall be the duty of the city manager to place and maintain

traffic signs and signals required by the traffic code, and he is hereby authorized to place and maintain such other traffic signs and signals as he shall deem necessary for the proper control of traffic.''

It does not appear in the evidence that the city council has defined the terms, ''standing'' or ''stopping.''

The plaintiff operates a hotel on the northwest corner of Fourth Street and Broadway in the city of Cincinnati. The hotel has entrances, for the coming and going of guests and those having business with the hotel, on Fourth Street and on Broadway. Over each entrance, signs are maintained announcing that the property is operated as a hotel.

Pursuant to the powers vested in the city manager and under his orders, certain traffic signs were installed and are maintained, applicable to the property of the hotel abutting on Fourth Street and on Broadway. On Broadway, these signs are placed a short distance to the north of the hotel entrance and contain the following words: ''Hotel Zone—Parking 15 Minutes—All Hours—Guests Only While Checking In and Out.'' An arrow points south to the portion of the street immediately in front of the entrance to the hotel. Below this sign is another sign containing the following words: ''Bus Stop. No Standing or Parking Any Time.'' An arrow points to the north. Thirty-eight feet south of these signs is another sign bearing the inscription: ''Hotel Zone—Parking 15 Minutes—All Hours—Guests Only While Checking In and Out.'' An arrow points north to the 38-foot area in front of the entrance to the hotel. Below this sign is another bearing the inscription: ''No Stopping or Parking Any Time.'' An arrow points to the south, covering the area between the sign and the corner of Fourth and Broadway.

These signs contain regulations affecting the entire

frontage of the hotel on Broadway, which is a street extending in a north and south direction and defined in traffic regulations as a "two-way street."

On Fourth Street, which extends in an east and west direction and is designated as a "one-way" street west, three signs are placed upon a single pole, located 51 feet west of the northwest corner of Fourth and Broadway. The area includes the area opposite the Fourth Street entrance to the hotel. The upper of these three signs bears the incription: "No Standing or Parking 7-9 A. M., 4-6 P. M." An arrow points to the east, indicating the area immediately in front of the Fourth Street entrance to the hotel. The left of the two signs below bears the inscription: "Bus Stop —No Standing or Parking Any Time." An arrow points to the west and indicates an area abutting on the hotel property. The right of these two lower signs contains the inscription: "No Parking Any Time." An arrow points to the east, indicating also an area immediately in front of the Fourth Street entrance to the hotel.

Under the definition of parking, *supra*, the temporary stopping of a vehicle for the purpose of and while it is actually engaged in loading or unloading passengers or merchandise, those representing the city would have no right to interfere with those seeking entrance to or egress from the hotel for such purposes. From the evidence, however, it appears that the police have not recognized the exception, particularly within the hours of 7 to 9, a. m. and 4 to 6, p. m. So far as such is the case, the representatives of the defendant are interfering with the rights of ingress and egress appurtenant to the plaintiff abutting-property holder. These rights have long been recognized as being inherently appurtenant to such abutting-property holder. *State, ex rel. McKay, Exr.,* v. *Kauer, Dir.,* 156 Ohio

St., 347, 102 N. E. (2d), 703; *Greenberg* v. *L. l. Snod-grass Co.,* 161 Ohio St., 351, 119 N. E. (2d), 292.

It will be noted that the defendant has failed to protect the rights of the plaintiff on Fourth Street, as it has done on Broadway, where the area in front of the hotel is designated by appropriate signs, indicating a hotel zone, and the police in their interpretation of the ordinances and the signs maintained by the city manager have interfered with the rights of the plaintiff and the patrons of the hotel.

It is the claim of the plaintiff that the ordinance delegating power to the city manager to erect such signs is unconstitutional and void. This claim cannot be sustained. It may be inferred that council in the delegation of such power had the right to presume that the city manager would operate under such power in a manner consistent with the lawful and reasonable rights of abutting-property owners. In failing so to do, he has not vitiated the power of council to enact the ordinance, but rather has demonstrated that his interpretation of such power and performance thereunder have been arbitrary, unreasonable, and in conflict with the inherent rights of the holder of the property abutting on the street to have reasonable ingress and egress to and from its property, and to have such privileges extended to those having lawful business with the operator of the abutting property.

The ordinance is neither unconstitutional nor an unreasonable exercise of the police power vested in the city but, on the contrary, only becomes inoperative when the power vested in the city manager is unconscionably exercised. Peculiar to the particular business here involved, such unreasonable exercise of power becomes most oppressive. The signs indicate that, particularly during the hours mentioned, a prospective guest in stopping a vehicle for the purpose of

entering the Fourth Street entrance to the hotel is in danger of police interference and the consequences following his stopping to enter the hotel and discharge his baggage. It appears that even if he knew the way, it would be necessary for him to travel many city blocks, over a tortuous course of one-way streets, with many inhibitions against left turns, to finally reach the alternate Broadway entrance.

It seems apparent that, by the use of the signs on Fourth Street and the action of enforcing officers, the business of plaintiff, as the operator of a public hotel, will be severely curtailed. If guests are not permitted to stop at an entrance to the hotel long enough to leave their vehicles and discharge their baggage, or enter such vehicles and load baggage, that entrance might just as well be closed as far as such guests or prospective guests are concerned.

The conclusion is inescapable that, owing to the absence of proper signs and the presence of signs which are, to say the least, misleading as to the rights of the plaintiff, and owing to the interference by representatives of the city, the rights of the plaintiff have been unlawfully curtailed, and an injunction will be granted against such unlawful interference by either such signs or by the representatives of the defendant.

*Injunction granted.*

MATTHEWS, P. J., and HILDEBRANT, J., concur in the syllabus, opinion and judgment.