THE STATE, EX REL. THE OHIO OIL CO., *v.* CITY OF DEFIANCE ET AL.

(No. 184—Decided April 27, 1955.)

*Mr. John W. Winn,* for relator.
*Mr. John E. Zimmerman,* for respondents.

YOUNGER, J. This is an action in mandamus, originating in this court, to compel the safety-service director of the defendant city to issue a building permit to plaintiff for the erection of a super-service station on two lots on which plaintiff holds an option from the defendants Sutphen. The permit was denied solely on the ground that the land involved was classified as residential under Ordinance No. 1035, enacted March 19, 1935, as an emergency measure by the city council, which so-called zoning ordinance is attacked as being unconstitutional.

This ordinance, which is very short, consists of about two typewritten pages, and incorporates a map of the city on which the different properties used for business purposes as of the date of the ordinance are enclosed within red lines and are classified as business, and the remainder of the city is classified as residential.

It provides that there shall be no business located or building erected, of any nature, excepting residential, in the designated residential area or zone except upon the approval of the planning commission and that there shall be no business building erected or any major alteration made to any building already erected, in the business area or zone, without first obtaining the approval of the planning commission. It provides further that the ordinance shall be enforced by the safety-service director under the rules and regulations of the Board of Zoning Appeals, which is the City Planning Commission.

Zoning legislation is now held to be a valid exercise of the police power held by municipalities and, if in proper form and substance, is constitutional.

It is stated in 42 Ohio Jurisprudence, 807:

"* * * it is now well settled in most jurisdictions, as well as in Ohio, that an ordinance enacted by a municipality, dividing the whole territory of the municipality into districts according to a comprehensive plan which, in the interest of the public health, public safety, and public morals, regulates the uses and the location of buildings and other structures and of premises to be used for trade, industry, residence, or other specific uses,

the height, bulk, or location of buildings and other structures thereafter to be erected or altered, including the percentage of lot occupancy, set-back building lines, and the area of yards, courts, and other spaces, and for such purpose divides the city into zones or districts of such number, shape and area as are suited to carry out such purposes, and provides a method of administration therefor, and prescribes penalties for the violation of such provisions, is a valid and constitutional enactment.''

This ordinance does not define the terms ''residential'' or ''business.'' It prohibits the use for gasoline stations, super-service stations, auto sales or auto service stations in one particular section and is completely silent on all other pertinent subjects. It does not attempt to differentiate between one-family and multiple-family dwellings or between retail, commercial or manufacturing businesses. It makes no provision whatsoever for parks, churches, schools, libraries, hospitals or hotels. It makes no distinction between business and light or heavy industrial uses.

It neither sets forth a plan nor establishes any standards or regulations. It merely ''freezes'' the use of all property in the city, however widely scattered, to the use it was found to be in at the date of the ordinance and leaves it in the sole, absolute, uncontrolled and arbitrary discretion of an appointed commission to transfer any property from residential to business, or vice-versa; and without specifically providing so, permits the commission to control the size, shape and height of any new or repaired building, and to determine in its own discretion, the set-back building line, required lot area, percentage of lot coverage, uses permitted, and other important details.

The evidence shows that a large number of applications for transfer and building permits have been approved, and a large number denied, by the safety-service director and the City Planning Commission. However, the record also shows that the Board of Zoning Appeals has never held a meeting.

This court, in a recent case in Hardin County, *High School Bd. of Edn. v. Bd. of Edn. of Roundhead Local School Dist.*, 96 Ohio App., 429, 122 N. E. (2d), 192, held:

''Generally, a law which confers discretion on an administrative officer or board without establishing standards for the

guidance of the conferee is a delegation of legislative power and unconstitutional."

The Court of Appeals of the First Appellate District, in the very recent case of *Vandervort* v. *Sisters of Mercy of Cincinnati*, 97 Ohio App., 153, 117 N. E. (2d), 51, stated:

"We, therefore, conclude that if the use of this strip for parking purposes was a matter of policy, the village council could not delegate to the planning commission the determination of that question. If it was not a matter of policy, but was only its application to the subject matter of the policy predetermined by council, then the power could be delegated to the planning commissioner or any other administrative officer or body."

A pertinent observation on the question here under consideration was made by the court in the case of *Schloss Poster Advertising Co., Inc.,* v. *City of Rock Hill*, 190 S. C., 92, 2 S. E. (2d), 392, as quoted in *State, ex rel. Central Outdoor Advertising Co.,* v. *Leonhard*, 68 Ohio Law Abs., 542, 544, 124 N. E. (2d), 187, as follows:

" 'The danger is that it makes possible arbitrary discrimination and abuses in its execution, depending upon no conditions or qualifications whatever, other than the unregulated arbitrary will of the city authorities as the touchstone by which its validity is to be tested. * * * Ordinances which thus invest a city council with discretion which is purely arbitrary, and which may be exercised in the interest of the favored few, are unreasonable and invalid. The ordinance should have established a rule by which its impartial enforcement could be secured.' "

In our opinion it would indeed be difficult to write an ordinance which would grant wider latitude to the service-safety director or the City Planning Commission to exercise their own uncontrolled discretion or one which would confer greater power to establish the policy of the municipality as to zoning restrictions and the issuance of building permits.

We therefore hold that Ordinance No. 1035 of the City of Defiance is a delegation of legislative power to an administrative officer or board and is unconstitutional and void. The action, therefore, of the safety-service director and the City

Planning Commission, in refusing to issue to plaintiff the building permit applied for because of such ordinance, is contrary to law and null and void.

Ordinance No. 583 of the City of Defiance, passed December 29, 1917, introduced in evidence as relator's exhibit "R," was in effect at the time Ordinance No. 1035 was adopted, and is still in effect. It provides for the issuance of building permits by the director of public safety upon payment of the required fee and furnishing a bond if required by said officer.

A writ of mandamus will therefore issue, directing that the defendant Carl A. Sixeas as the Director of Public Safety of the City of Defiance, issue to the relator, The Ohio Oil Company, a building permit in accordance with and under the provisions of said Ordinance No. 583 of the City of Defiance.

*Writ allowed.*

QUATMAN, P. J., and MIDDLETON, J., concur.