CITY OF COLUMBUS, APPELLEE, *v.* DOLLINGS, APPELLANT.

(No. 6497—Decided March 14, 1961.)

*Mr. J. Russell Leach,* city attorney, *Mr. Bernard T. Chupka* and *Mr. Sidney H. Golden,* for appellee.
*Mr. Carlisle O. Dollings, in propria persona.*

DUFFY, J. The defendant, appellant herein, was charged with a violation of Section 27.34 of the Traffic Code of the City

of Columbus when he made a prohibited turn at the corner of State and High Streets. He has questioned the delegation of authority by the city council to the Director of Public Safety, claiming that the ordinance is unconstitutional because it provides for a delegation of legislative authority to an administrative officer.

Three days prior to the arrest in this case, the city council repealed all the ordinances which specifically enumerated the intersections where either left or right turns or both were forbidden and delegated authority to the Director of Public Safety to determine where signs should be placed; and this authority was contained in the language of Section 27.296 of the city ordinances, of which the defendant complains. This ordinance reads as follows:

"The Director of Public Safety is authorized to place markers, buttons or signs within or adjacent to intersections indicating the course to be traveled by vehicles turning at such intersections or preventing turns at such intersections, and such course to be traveled as so indicated *may conform to or be other than as prescribed by law or ordinance.*" (Emphasis ours.)

Many cases have been cited showing the constitutionality of laws delegating authority to various administrative officers of municipalities, and there is no doubt that a proper delegation is possible. For one of the latest discussions by the Supreme Court of Ohio, see *In re Adoption of Uniform Rules and Regulations*, 169 Ohio St., 445, which indicates that so long as the legislative body establishes a policy and fixes standards for the guidance of administrative agencies the grant of power is constitutional.

In the case of *Raskin Hotel Co.* v. *City of Cincinnati*, 97 Ohio App., 424, the First District Court of Appeals considered an ordinance of the city of Cincinnati, which contained the following language: "It shall be the duty of the city manager to place and maintain traffic signs and signals required by the traffic code, and he is hereby authorized to place and maintain such other traffic signs and signals as he shall deem necessary for the proper control of traffic"; and concluded that this was a lawful and reasonable provision for the exercise of police power

of a municipality as related to traffic regulations. The First District Court of Appeals felt that the council of the municipality was fully justified in presuming that the city manager would carry out the provisions of such ordinances in a lawful and reasonable manner, but had to find in that case that the actions of the city manager were unreasonable and found it necessary to enjoin the municipal authorities. The ordinance there did limit the city manager to that which he deemed necessary "for the proper control of traffic." Whether that be a sufficient standard or not, the ordinance in the instant case contains no such limitation.

In the ordinance of the city of Columbus under consideration in this case, the city council did not prescribe a specific standard for the safety director, and it is impossible to presume that a standard of lawfulness was intended where the ordinance contains these words—"may conform to or be other than as prescribed by law or ordinance."

It is our conclusion that the ordinance under consideration fails to establish a policy or fix standards for the guidance of the administrative officer, and should have been held as an improper delegation of legislative power, particularly since it gives authority to the administrative officer to act beyond the limits of prescribed laws or ordinances.

The judgment of the trial court will be, and hereby is, reversed.

*Judgment reversed.*

DUFFEY, P. J., and BRYANT, J., concur.

BRYANT, J., concurring. I concur in the opinion of Duffy, J., that the judgment of the Columbus Municipal Court finding Carlisle O. Dollings, defendant, appellant herein, guilty and imposing a fine is based upon error prejudicial to appellant and must be reversed as must the judgment of the Franklin County Common Pleas Court affirming the judgment of the Columbus Municipal Court.

Dollings was charged with the violation of Section 27.34 of the 1958 Columbus Traffic Code, enacted by the city of Columbus, plaintiff, appellee herein. He entered a plea of not guilty

and was tried to the court which found him guilty. The affidavit which was filed by a member of the Police Department of Columbus, in part, charges that Dollings:

"* * * being then and there the driver of a certain motor vehicle to-wit—an automobile, did unlawfully

"Disobey a green signal light and disobey two signs stating NO TURN contrary to the ordinances of said city, * * *."

Section 27.34, *supra*, reads in part as follows:

"No * * * driver of a vehicle * * * shall disobey the instructions of any official traffic-control signal, device or sign, as the same are defined in section 27.1 of this code * * *."

Section 27.1, *supra*, contains the following definition of "Official Traffic-control Signs or Devices":

"All signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, * * *."

So far as the alleged illegal act of Dollings is concerned, the facts are not in dispute. At 11:10 p. m. on June 3, 1958, Dollings was the driver of a motor vehicle occupied by himself and his wife, which was traveling south on South High Street, a main thoroughfare in Columbus, Ohio.

He was traveling in the lane for southbound traffic, which was nearest to the curb on the west side of South High Street, and was first observed by the police officer when he was a few hundred feet north of the intersection of State Street and South High Street. He was traveling at a rate of 15 miles an hour. There was a traffic light in operation at the intersection of High and State Streets, which was showing green for Dollings and other southbound traffic as he entered the intersection and made a right turn. The streets were dry, visibility was excellent, traffic was light and in all particulars, except the making of the alleged illegal turn, Dollings' driving was without flaw.

The traffic light, which was in operation at the time, was a three-phase light showing alternate lenses colored red, yellow and green. Two metal signs consisting of black letters on a white background were suspended over the portion of South High Street used by southbound traffic. One of these signs which was nearer the traffic light bore the legend, "NO

TURNS,'' and the other, in addition to the legend, ''No Turns,'' contained the additional legend underneath and in smaller letters, ''Except Buses.'' On the sidewalk at the northwest corner of the intersection was a movable traffic sign, called a tar wheel, which bore the legend on one side only, ''NO RIGHT TURNS.'' During rush periods this movable sign was placed in the street near the west curb of High Street, while at other periods, it was moved back on the sidewalk and turned so that the blank side of the sign only was visible to motorists.

At the trial, the prosecution was unable to present the testimony of Officer K. Fleischer of the Columbus Police Department, who had signed the affidavit, but, in his place, presented the testimony of Officer Harold E. Dick who was with Officer Fleischer at the time of the arrest. Officer Dick testified that on the night in question he was traveling in an ambulance cruiser driven by Officer Fleischer; that the cruiser was on East State Street four or five car lengths east of High Street headed west in State Street when he first observed the defendant's car; that as the cruiser approached High Street the traffic light showed red for the cruiser and green for the defendant and the defendant made a right turn while the traffic light showed green for him; that two no-turn signs were suspended in the middle of the street or portion assigned to southbound traffic; and that the traffic light is a three-phase light and shows red, yellow and green lights.

Much of the discussion in the arguments and briefs had to do with the validity of the no turn signs and whether they were in fact erected pursuant to lawful authority. The defendant made a motion to dismiss at the end of the prosecution's case, which was overruled by the court, and defendant also made a motion for a new trial, which also was overruled. Both motions called in question the sufficiency of the affidavit, and both rulings were assigned as errors by the defendant and will be considered together at this time so far as they relate to the sufficiency of the affidavit.

The material portions of the affidavit have been set forth earlier in this opinion and from them it would appear that the charge against the defendant, which was in two parts, was that he did:

(a) "Disobey a green signal light and"

(b) "disobey two signs stating NO TURN."

In Section 27.35 of the Columbus Traffic Code the various legends and colors of traffic control signals are set forth, including among others "(a) Green alone or 'go' " and "(f) Green arrow alone," as well as a description of other colors and legends and their meaning. There is a clear distinction between the meaning of a green signal and a green arrow alone; hence, it is obvious that *taken by itself* a green traffic signal authorizes traffic facing it to "proceed straight through or turn right or left." (See Section 27.35 [a] 2, 1958 Columbus Traffic Code.) It is only when some additional sign, signal or device is present that a limitation is placed upon the meaning of a green traffic light.

I conclude, therefore, that so far as that portion of the charge which reads, "disobey a green signal light," it is meaningless and fails utterly to charge an offense.

The second portion of the charge is that the defendant did "disobey two signs stating No Turn." Reference has already been made to the provisions of Section 27.34, *supra*, under which this charge was filed. That section forbids a driver to disobey the instructions "of any official traffic-control signal, device or sign, *as the same are defined in Section 27.1 of this code.*" (Emphasis added.) Section 27.1, *supra*, also set forth above, defines official traffic control signs or devices as those "placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic."

Thus it is clear that the prohibition contained in Section 27.34, *supra*, does not apply to all signs, public or private, but applies only to an "official traffic-control signal, device or sign" and then only when two other conditions are present, to wit, (1) when it is erected by a public authority having jurisdiction and (2) when it is erected for the purpose of regulating, warning or guiding traffic.

I do not believe it will be disputed anywhere that there was no intention on the part of the city council to place a penalty upon the violation of the instruction of a sign not erected by any public authority. I believe it is equally clear that only a

part of the signs erected by public authority are included, namely, those regulating, warning or guiding traffic.

It appears to me that as an indispensable minimum the affidavit in a case such as this must charge the violation either in the words used in the ordinance or in other terminology conveying the same meaning. To be within the terms of Section 27.34, *supra*, the affidavit must allege in addition to other requirements that defendant violated the instructions of (a) an official traffic control signal, (b) erected by public authority and (c) to regulate, warn or guide traffic.

It must be borne in mind that this is a criminal case and if a vital element of the charge is omitted the affidavit is fatally defective and such a defect cannot even be cured by a bill of particulars. In 28 Ohio Jurisprudence (2d), 432, Indictment and Information, Section 30, the rule is stated as follows:

"*All the elements necessary to constitute a crime must be averred in a criminal charge.* That is, a complete description of all the facts and circumstances which constitute the crime and which are necessary to be proved to sustain a conviction must be alleged, and the charge must be brought clearly within the statute or ordinance on which it is based. * * * *If any material element or ingredient of an offense, as defined by the statute or ordinance, is omitted from an indictment or other charge of crime, the omission is fatal to the validity of the indictment.* A failure to charge all the necessary facts cannot be supplied or corrected by the use of the word 'unlawful'; *and the failure to allege an essential element of the crime charged cannot be cured by a bill of particulars.*

"In ascertaining the elements which must be averred, the enactment defining the offense is the principal source, with the possible inclusion of ingredients interpreted into such law." (Emphasis added.)

I do not regard "two signs stating No Turn" as the equivalent of "official traffic-control signal, device or sign" (Section 27.34, *supra*), "placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic" (Section 27.1, *supra*). I conclude, therefore, that there was a fatal defect and omission in the affidavit as to the second portion of the charge, that the mo-

tion to dismiss and the motion for a new trial made by the defendant should have been sustained and that the failure so to do was prejudicial error necessitating the reversal of the judgment of conviction.

From what has been said above it will be apparent that, in my opinion, the result would be the same if the two parts of the affidavit were considered together. The first part relative to the green light is simply meaningless surplusage which adds nothing, while, in the second part, several material elements or ingredients of the crime are left out and the language used is insufficient to charge the offense set forth in the ordinance.

What has been set forth heretofore, if adhered to, disposes of the whole case and ordinarily would suffice. However, as further review is a probability, I deem it proper to give consideration to other issues in the case and set forth my views with respect thereto.

Attached to the bill of exceptions are ten exhibits offered by the defendant and three offered by the prosecution. We shall refer to these defense exhibits: No. 5, Charter of City of Columbus, Ohio; No. 6, Columbus Traffic Code of 1952 (Motor Vehicles and Traffic); No. 7, Columbus Traffic Code (of 1958), also known as Ordinance No. 295-58; No. 8, a three page single-spaced list entitled: ''No Left Turns Locations where left turns are prohibited as of April 21, 1958,'' and, on the third page at the bottom, bearing the signature of the safety director as approving the list on either May 21, 1958, or May 24, 1958, with State and High Streets mentioned at the bottom of page 2; and, No. 9, a copy of a letter dated April 9, 1958, from the police traffic subdivision to the traffic engineer, referring to the newly enacted Section 27.297 of the Columbus Traffic Code, and the necessity of an order from the safety director.

The prosecution's exhibits to which reference will be made are: Exh. A, a copy of a letter of May 12, 1958, from the traffic engineer to the safety director by which apparently three lists of intersections were transmitted to the director dealing separately with no left-turn, no right-turn and no-turn intersections; Exh. B, which is headed ''No Turns''—''Locations where no turns are permitted as of May 12, 1958,'' at the bottom of which appears under date of May 21 or 24, 1958, the no-

tation, "By Order of and Approved," followed by the safety director's signature; and Exh. C, a letter or order from the safety director to the city attorney and others dated June 3, 1958—a blanket order made by the safety director.

It is not clear whether the amendments and repeals provided for in the Columbus Traffic Code of 1958 and ordinance 295-58, by which they were enacted, became effective in 30 days after March 17, 1958, the date the ordinance was passed, to wit, on April 17, 1958, as provided in Section 22 of the Charter of the City of Columbus, and in Section 3 of ordinance 295-58, or on June 1, 1958, as provided in Sections 1 and 2 of the ordinance.

At the beginning of Section 1 of ordinance 295-58, *supra*, it is provided that the approximately 195 sections following shall be amended "effective June 1, 1958," and in Section 2 it is provided that the original form of the same approximately 195 sections, which are amended, shall be repealed "effective June 1, 1958," and the third section of the ordinance which was passed and approved on March 17, 1958, reads as follows: "That this ordinance shall take effect and be in force from and after the earliest period allowed by law."

Section 22 of the Columbus City Charter provides that, "except as otherwise provided in this charter," all ordinances and resolutions "shall be in effect from and after thirty days from the date of their passage by the council," apparently making the effective date in this case April 17, 1958. I note that in all the briefs, opinions and arguments which have come to our attention in this case, it was assumed that the amendments were effective on June 1, 1958.

But did the then safety director so regard it? Apparently not. One of the principal differences between the traffic code of 1952 and the 1958 revision thereof was that the power to designate which intersections should have restrictions on turns was surrendered by city council and was turned over to the safety director. Section 27.296 as set forth in the 1958 ordinance is as follows:

"The director of public safety is authorized to place markers, buttons or signs within or adjacent to intersections indicating the course to be traveled by vehicles turning at such intersections or preventing turns at such intersections, and *such*

*course to be traveled as so indicated may conform to or be other than as prescribed by law or ordinance.*" (Emphasis added.)

Thus it was that under the new plan of operation all ordinances setting forth the names of the intersection and the limitation on turning were repealed and the director was given authority to designate the intersections and the limitation on turning at such intersections without any further action of city council.

It would appear that the safety director, by his approval on May 21 or 24, 1958, of the list of no left turns as well as by his order and approval on May 21 or 24, 1958, of locations where no turns are permitted, felt that some power was then reposed in him by virtue of ordinance 295-58 which, as we have said, was effective according to Sections 1 and 2 on June 1, 1958, and according to Section 3 on April 17, 1958.

I do not believe the ordinance was effective until June 1, 1958, for the reason that the Columbus City Charter, Section 21, requires "a repeal of the original ordinance, resolution, section or sections so amended" whenever an ordinance, resolution or section thereof "shall be revised or amended." To hold that the 1958 ordinance was in fact effective on April 17, 1958, would, in my opinion, run counter to the provisions of the charter just referred to. However, until the 1958 ordinance became effective the powers newly conferred upon the safety director were not effective and any attempts to exercise them either on May 21 or 24, 1958, were completely unauthorized.

It seems to be conceded by both prosecution and defense that prior to June 1, 1958, the only specific action as to turns taken by council affecting southbound traffic on High Street at the intersection of State Street was to forbid left turns at that intersection by southbound traffic. Conversely, the city council had never forbidden right turns by southbound traffic on High Street at State Street.

It likewise is not disputed that the authority for forbidding right turns at this intersection by southbound traffic arose (1) from a so-called emergency or temporary order made in 1957 or in some year prior to 1958 because of construction in the vicinity and (2) from the prosecution's Exhibit C, which was the memorandum dated June 3, 1958, from the safety director to two of his subordinates and to the city attorney.

As to the text of the early order which was supposed to have been issued in 1957, it has not been pointed out to us nor do I find it in the record. There was no evidence in the record that the so-called emergency which existed in 1957 or whenever the temporary order was issued existed at anytime during 1958, and council did not officially abdicate its power to legislate on this subject until ordinance No. 295-58 became effective.

In any event, the prosecution's Exhibit C, which at the top bore the date of June 3, 1958, was addressed in memorandum form "To: City Attorney, James Musick (Traffic Engineer) and Chief George Scholer," and "From: Leo L. Phillips" (Safety Director), reads as follows:

"It is hereby ordered by the director of public safety pursuant to the authority vested in me by Chapter 27, of the Code of the City of Columbus as amended in 1958; that all crosswalks, loading zones, restrictions on turning, one-way streets, stop intersections, yield right-of-way intersections, traffic control intersections and the appropriate signs thereto; through routes and traffic lanes that are by ordinance or directive effective prior to this date and all traffic control devices as herein above described that were in effect in areas not annexed, but which are now annexed to the city of Columbus, are hereby adopted as a part of Chapter 27, of the Code of the City of Columbus as of June 1, 1958."

The part of the above order with which we are particularly concerned reads as follows:

"It is hereby ordered * * * that all * * * restrictions on turning * * * that are by ordinance or directive effective prior to this date and all traffic control devices as herein above described, that were in effect in areas not annexed, but which are now annexed to the city of Columbus, are hereby adopted as part of Chapter 27, of the Code of the City of Columbus as of June 1, 1958."

The language used was somewhat obscure and rather difficult to apply or even understand. For example, the phrase, "prior to this date," appears to this court to mean "prior to June 3, 1958." Does it mean immediately prior thereto? Probably not for most of the ordinances had expired as of midnight on May 31, 1958.

If it goes back prior to June 2, 1958, does it go back indefinitely and just where does it stop? There is no rule or guide by which to determine, and the uncertainty might well require examination of council ordinances over a considerable period of time to answer the questions which arise.

As to the phrase, "all traffic control devices as herein above described," I have searched the order for the description referred to, but without success.

If we assume that the two metal signs at State and High Streets were "traffic-control devices," as claimed by the prosecution, it must be noted that as to them the order is applicable only to those which had been "in areas not annexed, but which are now annexed" to Columbus, and no one contends that State and High Streets are recently annexed.

As I see it Section 27.296 of ordinance 295-58, *supra*, grants to the Director of Public Safety one power and one power only, namely, "to place markers, buttons or signs" at specified locations, and I have been unable to find the source of his authority to issue a blanket order extending indefinitely an already expired emergency or temporary order, the need for which had long since expired.

The only thing which the so-called order of June 3, 1958 (Exhibit C), does by its express terms is that certain restrictions on turning "are hereby adopted as a part of Chapter 27 of the Code of the City of Columbus." If it means valid restrictions, I am not aware of any nor have any been proved in the record.

That language nowhere mentions State and High Streets. The power given to the director was "to place markers, buttons or signs," and no one contends that the director did or caused anything to be done to or about any signs at State and High Streets either on or after June 1, 1958, or for that matter at any time in 1958.

The fact appears that for a brief period in 1957 there was temporary authority to ban right turns because of a temporary situation, and to construe a temporary order or an emergency order as one which continues indefinitely is to make it a permanent order, which clearly was beyond the power of the director.

In passing, let it be said that defense Exhibit 8 and prosecution Exhibit B, which are lists of no left-turn and no-turn intersections and bear the so-called approval of the safety director during May, 1958, add nothing to this record, for the reasons, first, that the ordinance revision probably was not then in effect, and, second, that the only additional power that was given the director on June 1, 1958, by Section 27.296, *supra*, as already pointed out, was to "place markers, buttons or signs," and nothing more.

But even if we assume that the safety director was given the power to adopt regulations or make orders which have the effect of ordinances, there is still another defect in the record in this case. The defendant in this case challenged the existence of any lawful ordinance, regulation or authority forbidding right turns at this intersection.

If the safety director had in fact made such an order or regulation as was claimed here, it became the duty of the prosecution to produce the entry or notation from the record which the director was required to keep, and it does not appear that that requirement was met by producing a letter or inter-office communication.

In this case, the Director of Public Safety is under a clear duty to keep a record of his proceedings, both by the Columbus charter and state law.

Section 101 of the Charter of the City of Columbus provides in part as follows:

"He [Director of Public Safety] shall keep a record of his proceedings."

Section 737.02 of the Revised Code provides, in part, as follows:

"He [Director of Public Safety] shall keep a record of his proceedings, a copy of which, certified by him, shall be competent evidence in all courts."

There are other objections, but this opinion is already long and I shall mention but one other error apparent upon the face of the record, and that is the provision of Section 27.296, *supra*, authorizing the director to place markers, buttons or signs "indicating the course to be traveled by vehicles turning at such intersections," and concluding with the statement "and such

course to be traveled as so indicated *may conform to or be other than as prescribed by law or ordinance.*" (Emphasis added.)

This language given its ordinary meaning would place the safety director above the power of either city ordinances or state law, but the city charter makes it the duty of his superior, the mayor, "to see that *all* ordinances of the city are enforced." (Emphasis added.) (See Section 62, city charter.)

Then there is the express provision of Section 4511.06 of the Revised Code, that what is known as the state Traffic Code (Chapters 4511 and 4513, Revised Code) "shall be applicable and uniform throughout this state and in all political subdivisions and municipal corporations therein, and no local authority shall enact or enforce any rule or regulation in conflict with such sections."

It is well settled that as to traffic matters the state law is supreme and local ordinances and regulations may conform to but may not conflict with such state law. The provision involved is clearly unconstitutional, but in the view which I have taken, it becomes less important for, as I see it, the director never in fact "placed" anything, but merely sought to revive a long-dead temporary or emergency regulation. So interpreted, his act was beyond any powers possessed by him, illegal, unwarranted, null and void.

For the reasons above set forth as well as those in the opinion of Duffy, J., I am of the opinion that each of the six assignments of error is well taken, and that the judgments of the Columbus Municipal Court and of the Court of Common Pleas of Franklin County are erroneous and must be vacated and set aside and the cause remanded to the trial court for further proceedings according to law.