CITY OF SOUTH EUCLID *v.* GLAZER.

(Nos. 10771, 11038, 11043, 11080—Decided November 12, 1974.)

South Euclid Municipal Court.

*Mr. Robert P. DeMarco,* assistant prosecutor, for the city of South Euclid.
*Mr. Joseph W. Diemert, Jr.,* for defendant.

KLEIN, J. Both the Assistant Prosecutor for the city of South Euclid, Ohio and counsel for the defendant agree that the sole issue before this court at this time is whether or not Section 1137.04 of the Codified Ordinances of the city of South Euclid, Ohio, is constitutional. Section 1137.-04 reads as follows:

"No Party Center shall permit any affair or function conducted thereon to remain open after 1:00 a. m., pro-

vided, however, upon application of the owner, person, firm, or corporation, and after investigation, the Mayor may grant a special permit to such time beyond 1:00 a. m. as determined by the Mayor.''

The hereinabove set forth ordinance of the city of South Euclid became effective on November 12, 1973. Thereafter, the defendant, Sam Glazer (the operator of a party center[1] on Mayfield Road in the city of South Euclid, Ohio) was cited on December 16, 1973, February 17, 1974, February 24, 1974 and March 3, 1974, for allowing said party center to be open after 1:00 a. m. in violation of Section 1137.04.

On March 14, 1974, the defendant made an oral motion to dismiss all four of the charges against him on the ground that Section 1137.04 is unconstitutional as enforced against him. A hearing was held on this motion on this date. During the course of this hearing, the defendant testified[2] that he spoke with the mayor's secretary regarding the issuance of a permit to remain open after 1:00 a. m. for a number of parties for which he had rented the party center until 2:00 a. m. The defendant was informed that permits were not being issued by the mayor pursuant to Section 1137.04 unless the application was for a party around the holiday season. Thereafter, the defendant made a written application to the mayor for a permit to remain open after 1:00 a. m. with respect to a party to be held on March 3, 1974. By letter dated February 17, 1974, the mayor denied the defendant's written request for a permit. The Academy Party Center remained open after 1:00 a. m. for this party and the defendant was cited for violating Section 1137.04, this being one of the four charges before the court at this time.

---

[1]This party center is called The Academy Party Center.

[2]The defendant also testified that it wasn't until he had rented his establishment to certain black professional groups that his problem about remaining open after 1:00 a. m. arose. An action was filed by the defendant in the United States District Court for the Northern District of Ohio under Section 1983, Title 42, U. S. Code, and this action is currently pending in that court awaiting the outcome of the instant action in the South Euclid Municipal Court.

## The Law

In my considered judgment, Section 1137.04 is patently unconstitutional on its face. This ordinance fails to prescribe any standards of guidance for the mayor in granting or denying a permit for extending the 1:00 a. m. deadline for affairs at party centers and, therefore, constitutes an illegal delegation of legislative power to a city official in violation of the Constitution of the state of Ohio and the Fourteenth Amendment to the Constitution of the United States. *Saia* v. *New York* (1948), 334 U. S. 558, 68 S. Ct. 1148; *Yick Wo* v. *Hopkins* (1886), 118 U. S. 356, 6 S. Ct. 1064; *State, ex rel. Ohio Oil Co.,* v. *Defiance* (1955), 99 Ohio App. 398, 133 N. E. 2d 392 (Court of Appeals for Defiance County); 5 McQuillin Municipal Corporations (3 Ed.), 362, Section 18.12. Simply stated, Section 1137.04 delegates to the mayor unfettered discretion to grant a special permit extending the 1:00 a. m. limits set forth in Section 1137.04 without prescribing any fixed or specific standards whatsoever for making his determination as to whether or not such permit should be granted.

The rule of law controlling the disposition of this case was enunciated as follows by the Court of Appeals for Cuyahoga County, Ohio, in *Cleveland* v. *Baker* (1960), 83 Ohio Law Abs 502, 504, 167 N. E. 2d 119, 121:

"An ordinance which delegates authority as to its enforcement without laying down any rules or standards * * * for such decision, grants an arbitrary power to interfere with constitutional rights and is void. *Cancer Society* v. *Dayton*, 160 Ohio St. 114 [114 N. E. 2d 219]."

In *Columbus* v. *Dollings* (1961), 113 Ohio App. 134, 136, 177 N. E. 2d 545, 547, the Court of Appeals for Franklin County, Ohio stated the rule governing the disposition of the instant case as follows:

"It is our conclusion that the ordinance under consideration fails to establish a policy or fix standards for the guidance of the administrative officer, and should have been held as an improper delegation of legislative power, particularly since it gave authority to the administrative officer to act beyond the limits of prescribed laws or ordinances."

The following detailed discussion of the principle of law governing the disposition of this case was enunciated in 5 McQuillin Municipal Corporations, *supra*, Section 18.12:

"* * * Arbitrary powers, conferred upon officers cannot be sustained. Indeed, it is elementary that it is only when the norm or standard for discretionary action under an ordinance is clearly set down that the ordinance can be enforced generally and impartially. Furthermore, a municipality seeking to enforce an ordinance of its own making must adopt the criteria established by the courts for statutes which seek similar regulation. Obviously, an ordinance lacking requisite uniformity cannot be sustained on the theory that city officers will enforce it fairly; it does not deserve to be called an ordinance at all when it is elastic in its provisions to the extent that it lacks requisite uniformity, especially if it is penal in character.

"This rule that municipal legislation must prescribe a standard or norm governing its enforcement and the exercise of any discretion invested in municipal officers with respect to its enforcement is justified by, if it is not a corollary of, the rule that a municipal legislative body cannot delegate its legislative power. In other words, a public duty which the legislature has confided to the judgment or discretion of the lawmaking power of a municipality cannot be delegated by the latter to the judgment or discretion of one constituent element of that power, or to the judgment or discretion of others. An ordinance which delegates authority for its enforcement without laying down proper rules or standards as a guide for such enforcement grants arbitrary power to interfere with the constitutional rights and is void.

"An ordinance seeking to restrict for the public good the rights of the individual incident to the ownership of property must do so by a rule applicable to all alike under the same circumstances, and cannot make his enjoyment of his property depend upon the arbitrary will or caprice of the municipal officers. * * *"

"* * * Moreover, the standards required to support a

delegation of power by a local legislative body may be general so long as they are capable of reasonable application and are sufficient to limit and define the administrative official's discretionary powers.''

In arriving at the conclusion set forth above, the undersigned has not been unmindful of the contention of the Assistant Prosecutor for the city of South Euclid that even if the court were to decide that the proviso (*i. e.*, last portion of Section 1137.04) is an unlawful delegation of authority to the mayor, that portion of the ordinance could be stricken without affecting the constitutionality of the first part thereof. I cannot concur in this view. This ordinance, in its entirety, consists of just one sentence. The last part of that sentence is an integral part of the whole. Or stating it another way, the proviso in the last part of Section 1137.04 limits the situations in which the first part of the sentence is effective and controlling. It would be impossible to know or to ascertain from the language of Section 1137.04 if the South Euclid City Council would have established a 1:00 a. m. closing time for functions had it not granted a discretionary right to the mayor to extend that time. Clearly, if this court were to hold that the first portion of this one sentence Ordinance is valid and enforceable and the last part is unenforceable because it is unconstitutional, this would be tantamount to changing the meaning and scope of Section 1137.04, and, in so doing, the court would be violating the scope of its authority by writing new legislation for the city of South Euclid, a function exclusively reserved to the city council.

For the reasons set forth above, defendant's motions to dismiss must be sustained.

*Motions to dismiss sustained.*